NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAREN VANDERHOOF-FORSCHNER, | : <br> : <br> : |
| Plaintiff, | : Civil Action No. 11-1309 (JLL) <br> : <br> : |
| v. | : <br> : |
| THOMAS A.I. VANDERHOOF, et al., | : <br> : OPINION <br> : |
| Defendants. | : <br> : |

**I.     Introduction**

This matter comes before the Court by way of plaintiff Karen Vanderhoof-Forschner's motion to vacate the Court's May 31, 2011 Order dismissing defendants Daniel R. Danzi, Sherry L. Pressman and the Township of Montville (collectively the "Montville defendants"). The motion also seeks, in addition or in the alternative, leave to file an amended complaint and an order disqualifying Patricia C. Melia, Esq. (Mot. to Vacate and/or Am. ("Pl.'s Mot."), April 27, 2012, ECF No. 38.) The Court has considered the papers filed by the parties, including defendant Joseph J. Bell's opposition (Opp'n, May 7, 2012, ECF No. 40) and plaintiff's reply (Reply, May 30, 2012, ECF No. 43). Pursuant to Fed. R. Civ. P. 78, the Court did not hold oral argument on these motions.   For the reasons stated below, the Court will deny plaintiff's motion to vacate the Court's May 31, 2011 order, grant plaintiff's motion to amend the complaint, and deny plaintiff's motion to disqualify Patricia C. Melia, Esq.

1

## II. Factual Background and Procedural History

### A. Background

Plaintiff Karen Vanderhoof-Forschner ("Karen") and defendant Thomas A. I. Vanderhoof ("Thomas") are siblings. (Original Complaint ("Compl.") ¶ 9, Mar. 7, 2011, ECF No. 1.) Karen claims that Thomas has had a strained relationship with the family and has always been jealous of her. (*Id.*) Since their mother's death on December 20, 2007, the siblings have been in a legal dispute over their mother's estate. (*Id.* ¶ 11.)

According to the complaint, on November 27, 2009, Karen was at her mother's house winding up affairs of the estate. (*Id.* ¶ 12.) The complaint alleges that Adam Dubek, Esq., the estate's administrator, instructed Karen, in writing, to put the items remaining in the house in storage. (*Id.*) While Karen was parked in the driveway, a Township of Montville ("Montville") police officer arrived in response to a 911 call made by Thomas. (*Id.* ¶ 12, 13.) Thomas had driven by the house and, allegedly after seeing Karen's car in the driveway, called his attorney, Bell, and then called 911 and asked that police investigate the premises. (*Id.* ¶ 29.) According to the complaint, Karen spoke with the officer and, by telephone, her attorney in the estate litigation verified that Karen had permission to be at the house. (*Id.* ¶ 22, 30.) The complaint also alleges that before the officer left the premises, Karen's attorney sent faxes to police headquarters confirming that Karen had permission to be there. (*Id.*) According to the complaint, the police officer told Thomas that Karen was authorized to be at the house and that "this was a civil matter." (*Id.* ¶ 31.)

According to the complaint, Thomas went to the police station later that day and "insisted on being instructed on how to file a complaint against Karen." (*Id.* ¶ 33.) The complaint also

claims that Bell called the police station and complained. (*Id.*) On December 2, 2009, Thomas allegedly filed a criminal Probable Cause affidavit against Karen, which caused Montville Township to initiate a criminal case against Karen for parking in the driveway. (*Id.* ¶ 34.) According to the proposed amended complaint, Bell assisted Thomas with this affidavit. (Proposed Amended Complaint ("PAC") ¶ 36, Apr. 27, 2012, ECF No. 38-13.) Thomas and Bell allegedly knew that Thomas did not own the premises and "should have known and / or maliciously chose to ignore the fact that Karen had permission to perform the tasks that she was performing incident to winding up the Estate" when they filed the affidavit. (Compl. ¶¶ 14, 41, ECF No. 1.) According to the complaint, Thomas and Bell used the criminal case "to gain leverage in the Estate case." (*Id.* ¶ 42.) For example, Bell allegedly wrote to Sherry L. Pressman, Montville's Municipal Court Administrator, to confirm that the criminal trial was proceeding on January 11, 2010 "because he wanted to use her legally required presence in the state at the criminal trial to gain advantage over Karen in the civil case by forcing her to submit to Bell and Thomas's civil case deposition right before Karen's nighttime trial." (PAC ¶ 45.)

The proposed amended complaint alleges that Pressman acted "outside the scope of her employment" and assisted Thomas in filing the fraudulent Probable Cause affidavit, even though she knew or should have know that Thomas had no ownership of the premises and had documents proving Karen's innocence. (*Id.* ¶ 43; PAC ¶ 47.) According to the proposed amended complaint, Pressman waived a probable cause hearing "in favor of the invalid and fraudulent affidavit submitted by Thomas and Bell." (PAC ¶ 47; Compl. ¶ 43.) The proposed amended complaint further alleges that, due to Pressman's "willful, intentional and grossly negligent actions and/or omissions, and Montville's failure to provide appropriate due process

3

procedures, training, and process," Montville mailed Karen a summons announcing "the State's charges against Karen and the trial date." (PAC ¶ 48, Compl. ¶ 44.) The summons charged Karen with one count of trespass and violation of N.J.S. 2C:18-3A, a disorderly persons offense. (*Id.*)

Plaintiff alleges that Daniel R. Danzi, the municipal prosecutor, reviewed the case and decided to advance it despite the "clearly invalid Probable Cause document" and "other documents that clearly proved Karen's innocence" and that she had permission to be at the house. (Compl. ¶¶ 48, 51.) Plaintiff claims that the Probable Cause Affidavit violated "Court NJ Rule 7:2-2(a)(1), which requires a court official to note the finding of probable cause on the Probable Cause statement and that no such required finding was made." (Compl. ¶ 57, PAC ¶ 60.)

According to the complaint, Danzi brought Karen to criminal trial on a "facially insufficient fraudulent Complaint that failed the requirements of 1) identifying the owner of the property, and 2) having the owner of the property sign the Complaint." (Compl. ¶ 58, PAC ¶ 62.) The complaint also claims that the Montville Police Department made a recorded determination that "this was not a criminal matter but a civil matter and a family matter." (*Id.*) The complaint also alleges that Bell had sent a letter to "the Court-appointed Administrator" which "placed Danzi, Pressman, Montville, Bell and Thomas under notice that Thomas lacked ownership over the property." (Compl. ¶ 66, PAC ¶ 70.) The amended complaint further alleges that Danzi's and Bell's acts "were done knowingly and with intent to commit fraud on the Court, to convict an innocent person." (*Id.*)

Plaintiff alleges that Montville Township electronically publicized the criminal trial and falsely stated to the public "that the state had probable cause to bring Karen to criminal trial."

4

(Compl. ¶ 84, PAC ¶ 96.)  The proposed amended complaint claims that this "false computerized information has been published electronically throught [sic] New Jersey and across the country, creating a new defamatory statement against Karen each time it is viewed, and placing a stain on Karen in her personal and legal profession."  (PAC ¶ 96.)

According to the amended complaint, the criminal case was dismissed on February 8, 2010, with prejudice.  (Compl. ¶ 90; PAC ¶ 104.)

### B.      Procedural History

On March 7, 2011, plaintiff filed a complaint against Thomas, Bell, Danzi, Pressman, and the Township of Montville alleging violations of plaintiff's civil rights and several state law causes of action. (Compl., Mar. 7, 2011, ECF No. 1.)  Service of process on Pressman was effected on April 17, 2011, and her answer was due on May 9, 2011.  (Return of Service, ECF No. 5.)  Service of process on Thomas, Bell, Danzi, and the Township of Montville was effected on March 30, 2011, and their answers were due on April 20, 2011.  (Return of Service, ECF No. 7.)  Bell and Thomas answered the complaint.  (Bell Answer, Apr. 27, 2011, ECF No. 6; Vanderhoof Answer, May 16, 2011, ECF No. 10.)  However, Danzi, Pressman, and the Township of Montville did not.

On May 11, 2011, the Court informed plaintiff that the time for the Montville defendants to answer the complaint had expired and ordered plaintiff to move the action by "requesting that a default and default judgment be entered or submitting an extension to answer out of time, within ten (10) days" from the date of the letter.[1]  (Letter Order, May 11, 2011, ECF No. 9.)  The

---

[1] Plaintiff's counsel claims that before July 2011, he did not have access to the CM/ECF system, and "was supposed to receive notices in the mail at his offices." (Pl.'s Br. at 6, ECF No.
(continued...)

5

Court also warned plaintiff that if she "fail[ed] to do so, this action shall be listed for dismissal on Monday, May 23, 2011 at 9:00 a.m." (*Id.*)

Plaintiff failed to move for default or default judgment and, on May 31, 2011, the Court dismissed the action "as to defendants Daniel R. Danzi, Sherry L. Pressman, and Township of Montville, without prejudice for failure to comply with the court's order of May 11, 2011."[2] (Order For Dismissal ("dismissal order"), May 31, 2011, ECF No. 11.)

On August 26, 2011, defendant Bell filed a motion to compel answers to discovery, claiming that he had not received any responses to the discovery served upon the plaintiff on May 20, 2011. (Mot. to Compel, Bell Certification ¶ 2, ECF No. 12.) In response, plaintiff's counsel filed a letter, dated September 6, 2011, stating that he had surgery on August 30, 2011 and requesting an adjournment of the initial scheduling conference that had been set for September 9, 2011. The letter also requested an extension of time to respond to Bell's motion. (Luthmann Letter, ECF No. 13.) The Court adjourned the initial scheduling conference to October 7, 2011, denied Bell's motion, and ordered the parties to meet and confer regarding their discovery issues. (Text Order, Sept. 6, 2011, ECF No. 14; Order, Sept. 19, 2011, ECF No. 17.)

On March 6, 2012, the Court held a pretrial scheduling conference with the parties and entered a Pretrial Scheduling Order that set a March 23, 2012 deadline for filing any motion to

---

[1](...continued)
38-1.)  Plaintiff's counsel also claims that he did not receive the Court's May 11, 2011 letter Order. (*Id.* at 7.)

[2] Plaintiff's counsel claims that he received this Order at his office several days after it was issued, promptly called the court and was told that "the Court could not do anything about dismissals, even though the May 31, 2011 order was the first notice [he] received." (Pl.'s Br. at 7.) Plaintiff's counsel claims that "[i]t was at that time, on or about June 2, 2011, that [he] began receiving emails about this case." (*Id.*)

add new parties or amend pleadings and a September 17, 2012 deadline for the completion of fact discovery. (Order ¶¶ 3, 12, Mar. 7, 2012, ECF No. 32.) The Order states that expert discovery shall be completed by December 17, 2012. (*Id.* ¶ 17.)

On March 23, 2012, plaintiff moved to vacate the Court's May 31, 2011 Order and reinstate the Montville defendants "and/or to amend plaintiff's complaint" and "for an order disqualifying Patricia C. Melia." (Pl.'s Mot., Mar. 23, 2012, ECF No. 33.) The Court denied plaintiff's motions without prejudice for failure to file a brief with the motion, as required by Local Civil Rule 7.2. (Order, Apr. 16, 2012, ECF No. 36.)

On April 27, 2012, plaintiff refiled the motions that are now before the Court. (Pl.'s Mot., ECF No. 38.) Defendant Bell filed an opposition to plaintiff's motion (Opp'n, May 7, 2012, ECF No. 40) and plaintiff filed a Reply on May 30, 2012 (Reply, ECF No. 43). On May 7, 2012, the Court granted the parties' request to adjourn the return date of the motion to June 4, 2012. (Order, ECF No. 41.)

**III.    Discussion**

Plaintiff requests that the Court either vacate its May 31, 2011 order dismissing defendants Danzi, Pressman, and the Township of Montville and/or grant Plaintiff leave to amend the complaint. In addition, plaintiff requests an order disqualifying attorney Patricia C. Melia, Esq. The Court will consider each of these requests in turn.

**A.    Motion to Reinstate Defendants Pressman, Danzi and Township of Montville**

Plaintiff seeks relief from this Court's May 31, 2011 order, arguing that the Court should find excusable neglect pursuant to Fed. R. Civ. P. 60(b)(1). (Pl.'s Br. at 10, ECF No. 38-1.) Plaintiff claims that her counsel never received the Court's Order warning plaintiff to request

default or risk dismissal and contends that her counsel received the dismissal order days after it was issued. (Pl.'s Br. at 7, ECF No. 38-1.) Plaintiff contends that she has, at all times, acted in good faith and with clean hands. (Pl.'s Br. at 10, ECF No. 38-1.) In addition, plaintiff asserts that she applied for relief within one year of the dismissal order and, because Montville defendants had been previously served, prejudice to them would be minimal. (*Id.*) Plaintiff also claims that reinstating the Montville defendants would be procedurally more efficient than if plaintiff filed a separate action against them. (*Id.*) Plaintiff also contends that she is out of time to request relief under Fed. R. Civ. P. 59(e) or Local Civil Rule 7.1(i), thus, relief under either provision is unavailable. (*Id.* at 8-9).

Defendants argue that plaintiff is not entitled to relief under Fed. R. Civ. P. 60(b)(1) because plaintiff's counsel's failure to become familiar with electronic filing, in accordance with federal and local rules, does not amount to excusable neglect . (Opp'n at 4-5, ECF No. 40.) In addition, defendants assert that relief should be denied for plaintiff's failure to move to reinstate the Montville defendants earlier. (*Id.* at 5.) Defendants also agree with plaintiff's statement that she is not entitled to relief under either Fed. R. Civ. P. 59(e) or L. Civ. R. 7.1, primarily because of her untimely application. (*Id.* at 6.)

Rule 60(b) provides that, under certain circumstances, "the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . ." Fed. R. Civ. P. 60(b). A "final" order has been defined as one "which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Penn West Assocs. v. Cohen*, 371 F. 3d 118, 125 (3d Cir. 2004). Conversely, "there is no final order if claims remain unresolved and their resolution is to occur in the district court." *Id.* Here, the May 31, 2011 Order dismissed only the

Montville defendants. It did not end the litigation on the merits. Plaintiff's claims against defendants Bell and Thomas remain unresolved. Therefore, the May 31, 2011 dismissal order was not final and does not fall within the scope of Rule 60(b).[3] Accordingly, the Court finds Rule 60(b) inapplicable[4].

The Court's determination that Rule 60(b) does not apply to plaintiff's motion does not end the discussion. The dismissal order specifically stated that it was "without prejudice," meaning that plaintiff is not foreclosed from pursuing her claims against the Montville

---

[3] Plaintiff invokes the six factors in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) as relevant to her motion under Rule 60(b)(1) and argues that "failure to consider all of the factors prior to dismissing an action may constitute an abuse of judicial discretion." (Pl.'s Br. at 9, ECF No. 38-1) (citing *Emcaso Ins. Co. v. Sambrick*, 834 F.2d 71, 73-74 (3d Cir. 1987)). However, plaintiff appears to be conflating the standard applied on a Rule 60(b)(1) motion with the factors a court applies under *Poulis* when deciding whether to dismiss a case with prejudice for failure to prosecute. Here, the Court already made the decision to dismiss the Montville defendants. Plaintiff brings her motion under Rule 60(b) to vacate that order based on "excusable neglect." (Pl.'s Mot., ECF No. 38.); *see also* Fed. R. Civ. P. 60(b)(1) (giving courts discretion to grant relief from final order for certain reasons such as "mistake, inadvertence, surprise, or excusable neglect"). Moreover, the Court's dismissal order was "without prejudice." Thus, this does not concern a "punitive prejudicial dismissal like that addressed in *Poulis*." *See Choi v. Kim*, 258 F. App'x 413, 417 n. 5 (3d Cir. 2007). Accordingly, at this juncture, *Poulis* does not apply.

[4] The parties assert, and the Court agrees, that plaintiff's motion should not be construed as a motion for reconsideration. First, the plaintiff's motion was filed more than nine months after entry of the dismissal order, well-beyond the fourteen day deadline required under the Local Civil Rules. *See* L. Civ. R. 7.1(i). "An untimely filed motion for reconsideration may be denied for that reason alone." *Oriakhi v. Bureau of Prisons*, No. 07-264, 2009 WL 1874199, at *3 (D.N.J. June 29, 2009). Thus, at this point, a motion for reconsideration would be denied as untimely. Second, plaintiff is not arguing that the court should reconsider its order because of "(1) an intervening change in controlling law; (2) the availability of new evidence . . .; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *See Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Plaintiff argues only that her failure to respond timely to the Court's Order resulted from her counsel's own "excusable" conduct in not registering to be an ECF filing user. Thus, reconsideration of the dismissal order under Local Civil Rule 7.1(i) is not appropriate here.

defendants. "The primary meaning of dismissal without prejudice . . . is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506 (2001)[5]. Thus, the Court will turn to plaintiff's motion to amend the complaint that requests, *inter alia*, leave to add the Montville defendants.

### B. Amendment under Fed. R. Civ. P. 15

Plaintiff argues that the Court should grant her motion to amend the pleadings because, under the Rule 15 standard, leave to amend should be given freely[6]. (Pl.'s Br. at 11, ECF No. 38-1.) However, plaintiff does not specify in her brief what she seeks to add. She asserts only that discovery has "led directly to the assertion of new facts in the attached proposed First Amended Complaint."[7] (*Id*.) Defendants argue that plaintiff's motion to amend should be denied because

---

[5] It appears that the events giving rise to the claims in the Complaint allegedly took place in late 2009 and early 2010. However, neither party has addressed the statute of limitations or whether, under Fed. R. Civ. P. 15(c), the amendments "relate back" and should be treated as if they were filed on the date of the original complaint. *See* Fed. R. Civ. P. 15(c). Accordingly, the Court will not consider those issues here.

[6] The Court has determined that only the liberal Rule 15 standard applies to plaintiff's motion to amend. Plaintiff's original motion to amend was filed by the deadline set in the Scheduling Order. (Scheduling Order, ECF No. 32; Motion to Am., Mar. 23, 2012, ECF No. 33.) The motion was denied without prejudice for procedural defects, and the Court reset the motion to amend briefing schedule. (Order, ECF No. 36.) Because the motion was timely filed, plaintiff does not have the burden of satisfying the good-cause standard under Rule 16 to amend her complaint.

[7] After reviewing plaintiff's proposed amended complaint, the Court notes that, in addition to reinstating the Montville defendants and adding new facts, the proposed amended complaint seeks to add claims against all defendants for frivolous litigation (PAC ¶¶ 151-156), fraud and conspiracy to commit fraud (PAC ¶¶ 200-201), and defamation (PAC ¶¶ 202-205). For several of the claims, plaintiff adds to the relief she is seeking in the "wherefore" statement. Specifically, she adds "expungement of the charges brought by Danzi on behalf of the State of

(continued...)

the defendants that plaintiff seeks to add "are all immune from suit" and granting leave to amend would be futile. (Opp'n at 6, ECF No. 40.) Defendants also argue that plaintiff has acted in bad faith and that they would be prejudiced by the timing of the amendment. (*Id.* at 10.)

### C. Standards To Amend under Fed. R. Civ. P. 15

In pertinent part, Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits," and provide that if the underlying facts relied upon by a party might be a proper subject of relief, that party should have the opportunity to test its claims on the merits. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).

The United States Supreme Court has stated that leave to amend under Rule 15 may be denied in cases of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposing party; or (4) futility of amendment. *See Foman*, 371 U.S. at 182. However, where there is an absence of undue delay, bad faith, prejudice or futility, leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (stating that "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust"). The decision to grant leave to amend rests in the sound discretion of the Court. *See Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous. of V.I., Inc.*, 663 F.2d 419, 425 (3d Cir. 1981).

---

[7](...continued)
New Jersey and exemplary damages. (*See* PAC at pages 34, 38, 40, 42, 43, 45, 46, 47, 48.)

### i. Undue Prejudice and Bad Faith

The Court of Appeals for the Third Circuit has stated:

> [t]he passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party. The question of undue delay, as well as the question of bad faith, requires that we focus on the [movant's] motives for not amending their [pleading] to assert this claim earlier; the issue of prejudice requires that we focus on the effect on the [adverse party].

*Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir.1984) (internal citations and quotation marks omitted); *see also Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) (stating that "the question of undue delay requires that we focus on the movant's reasons for not amending sooner" and the issue of prejudice focuses on hardship to the nonmovant if the amendment is permitted).

Defendants argue that granting plaintiff's motion to amend would cause them undue prejudice. When examining the issue of undue prejudice, the court considers "the hardship to the [opposing party] if the amendment were permitted" and "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 1984) (finding prejudice where amendment would cause burdensome new discovery and significant new trial preparation). However, no prejudice will be found where the amendment does not result in new facts requiring extensive additional discovery. *Adams*, 739 F.2d at 869.

Defendants claim that adding new defendants will require them to incur additional discovery costs and delay the resolution of this case. (Opp'n at 10.) The Court disagrees. Fact discovery is not scheduled to end until September 17, 2012. Amending the complaint at this early

stage of discovery would allow defendants to resolve all of the issues in the same proceeding, and likely reduce costs for the defendants. In addition, the new facts in the proposed amended complaint merely amplify the original facts, and the new claims are based on facts and circumstances that are substantially similar to those in the original complaint. This factual overlap, and the broad standard for discovery under Fed. R. Civ. P. 26, make it indeed possible, if not likely, that the newly pleaded facts in the proposed amended complaint would be discoverable in any event. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that courts construe Rule 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."); *Paluch v. Dawson*, Civil No. 1:CV-06-01751, 2007 WL 4375937, at *1 (M.D. Pa. Dec. 12, 2007) ("Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with the fullest possible knowledge of the issues and facts before trial." (citation and internal quotation marks omitted)). Moreover, "the need for additional discovery does not conclusively establish prejudice." *Dole v. Arco Chemical Co.*, 921 F.2d 484, 488 (3d Cir. 1990). Here, the discovery among all of the defendants will overlap and involve related issues. Defendants fail "to demonstrate that [their] ability to present [their] case would be seriously impaired were amendments allowed." *Heyl & Patterson Int'l*, 663 F.2d at 426. Nothing in the record shows that plaintiff's proposed amendments would create any hardship for the defendants, including the Montville defendants. After the Montville defendants were served, the litigation stalled for a multitude of reasons. The scheduling order setting the discovery timeline was entered shortly before plaintiff filed this motion. Thus, it cannot be said that permitting the amendments would result in a more protracted, complicated litigation or require the existing parties to revisit

discovery. Accordingly, the Court finds that discovery will not be unduly delayed, nor will the defendants be prejudiced, by granting plaintiff's motion to amend.

The Court also does not find evidence of bad faith. To determine if the motion has been made in bad faith, the Court must look to "whether the motion *itself* is being made in bad faith, not whether the original complaint was filed in bad faith or whether conduct outside the motion to amend amounts to bad faith." *Trueposition, Inc. v. Allen Telecom, Inc.*, No. CIV.A.01-823, 2002 WL 1558531, at *2 (D. Del. July 16, 2002); *see also J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 614 (3d Cir. 1987) ("[T]he question . . . of bad faith requires that we focus on the plaintiff's motives for not amending their complaint earlier").

The only evidence defendants point to in support of their bad faith argument pertains to discovery issues between the parties. (Opp'n at 11-12, ECF No. 40.) Plaintiff's failure to provide certain documents in discovery has no bearing on whether her motion to amend is being made in bad faith. In addition, plaintiff filed her motion to amend within the time set forth in the scheduling order. Accordingly, there is no cause to deny the motion on the basis of bad faith.

### ii. Futility

An amendment will be considered futile if it is "frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (citations and quotations omitted). However, given the liberal standard for amendment of pleadings, courts place a heavy burden on opponents who wish to declare a proposed amendment futile. *Aruanno v. New Jersey*, No. 06-0296, 2009 WL 114556, at * 2 (D.N.J. Jan. 15, 2009). Therefore, "[i]f a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1487

(3d ed. 1990) (emphasis added). In determining whether an amendment is "insufficient on its face," the Court employs the Rule 12(b)(6) motion to dismiss standard. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted). The question before the Court, therefore, is not whether the movant will ultimately prevail. Rather, it is whether the plaintiff is able to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

"Federal Rules of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotations and citation omitted). "When there are well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). While detailed factual allegations are not necessary to survive a Rule 12(b)(6) motion, "a [pleader's] obligation to provide the grounds of his entitlement to relief requires more than labels[,] conclusions, and a formulaic recitation of the elements of a cause of action" and demands that the "[f]actual allegations . . . be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555; *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the *Twombly* pleading standard "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].") (quotations and citations omitted). When examining the sufficiency of a litigant's pleading under Rule 12(b)(6), "all well-pleaded allegations of the complaint must be taken as true and interpreted in the light

15

most favorable to the [party asserting them], and all inferences must be drawn in favor of them. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 158 (3d Cir. 2010).

Here, defendants argue that plaintiff's motion to amend should be denied because the Montville defendants "are all immune from suit." (Opp'n at 6, ECF No. 40.) Defendants argue that Danzi is a municipal prosecutor and "prosecutors are immune from suit, including actions under Section 1983." (*Id.*) Defendants claim that Pressman, a court administrator, acts under the authority of the municipal judge, therefore, she is entitled to qualified immunity. (*Id.* at 7.) In addition, defendants assert that the Township of Montville has sovereign immunity and is not subject to civil liability. (*Id.* at 9.)

In response, Plaintiff contends that defendants arguments "offer[] no compelling reason to defeat the liberal application of Rule 15(a)." (Reply at 5, ECF No. 43.)

Having considered defendants arguments regarding immunity, the Court cannot conclude based on the limited record presented that the proposed amendment is clearly futile. Defendants have not met their burden of showing that the Montville defendants are entitled to complete immunity. An immunity defense must be supported by the application of facts to law. Defendants have made no such legal argument here. Defendants do not identify from which of the thirteen claims in plaintiff's proposed amended complaint the Montville defendants are immune. Defendants also fail to support their argument with any discussion of how the specific conduct of the Montville defendants is protected.[8] Although the Montville defendants may

---

[8] For example, defendants simply claim that Danzi, as a prosecutor, is immune from suit. However, as the Supreme Court explained in *Kalina v. Fletcher*, "in determining immunity, we examine the nature of the function performed, not the identity of the actor who performed it." 522 U.S. 118, 127 (1997) (internal quotation marks, citation, and footnote omitted). Thus,
(continued...)

16

ultimately have a viable immunity defense, defendants have failed to meet their burden of demonstrating futility on the limited record here. Therefore, the Court cannot conclude, based on the record before it, that the proposed amendments are so clearly futile that plaintiff's motion to amend should be denied.[9]

### IV. Plaintiff's Motion To Disqualify Patricia Melia, Esq.

Plaintiff argues that Patricia C. Melia should be disqualified as counsel for defendant Bell in the instant matter. Plaintiff contends that Melia's representation of Bell violates Rule of Professional Conduct 3.7(a), which provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness . . . ." Plaintiff contends that Melia will likely be a necessary witness at trial because she represented Thomas in the related criminal matter. (Pl.'s Br. at 12-13, ECF No. 38-1.)

Defendants claim that the motion to disqualify Patricia Melia is moot because Bell's matter has been assigned to Paula Ortega, another attorney in Melia's firm. (Opp'n at 13, ECF No. 40.) Plaintiff's reply restates her arguments under RPC 3.7(a) and does not address defendant's assertion that, because the matter has been reassigned to another attorney in Melia's firm, the motion to disqualify is moot. (Reply at 6-7, ECF No. 43.) Plaintiff asserts, without

---

[8](...continued)
immunity is not as expansive as defendants claim. To be entitled to immunity, prosecutors must be functioning as "advocates" while engaging in the alleged conduct that gives rise to the constitutional violation. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993). Defendants' brief fails to explain how the actions of Danzi, or any of the Montville defendants, are protected by the immunity doctrine. Thus, they have not met their burden of showing that plaintiff's proposed amended complaint is clearly futile.

[9] The Court reaches this conclusion without prejudice to defendants' right to raise immunity as a defense either as a motion to dismiss under Fed. R. Civ. P. 12(b)(6), or a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

citing a single case, that "[e]ven a sworn statement by Ms. Melia that she will not act as attorney and advocate may be subject to the appearance of impropriety as Ms. Melia may yet be a joint tortfeasor." (*Id.* at 6.)

On motions to disqualify counsel, the movant bears the burden of showing that disqualification is appropriate. *Maldonado v. New Jersey,* 225 F.R.D. 120, 136-37 (D.N.J. 2004). "Courts disfavor such motions and grant them only when absolutely necessary." *Id*. (citing *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993)).

However, defendants have represented that Melia is not an attorney in this matter. Thus, the fact that she might be called to testify at trial is of no moment because she is not acting as an advocate in this case. Moreover, plaintiff has presented nothing to the Court, either factually or legally, to conclude otherwise.

Additionally, neither plaintiff nor defendants addressed RPC 3.7(b), which states that "[a] lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 [the general rule regarding conflicts of interest] or RPC 1.9 [regarding duties to former clients]." Furthermore, it does not appear that RPC 1.7, which prohibits a concurrent conflict of interest would bar an attorney from Ms. Melia's firm from representing Bell. It also does not appear that RPC 1.9, which governs representation of a current client whose interests are materially adverse to a former client, would apply. At this stage of the litigation, Thomas Vanderhoof and Bell are both defendants, not adverse parties. Therefore, there appears to be no basis for disqualification on these grounds at this time. Of course, if counsel becomes aware of a conflict, they may raise it with the Court at any time.

**V.     Conclusion**

For the reasons set forth above, plaintiff's motion to vacate the Court's May 11, 2011 order is denied.  However, plaintiff's motion for leave to file an amended complaint is granted. Plaintiff's motion to disqualify Patricia C. Melia is denied.


s/ Michael A. Hammer
UNITED STATES MAGISTRATE JUDGE
